UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

NAVIGATORS SPECIALTY
INSURANCE COMPANY

    *Plaintiff*,

v.

DOUBLE DOWN INTERACTIVE, LLC

    *Defendant.*

CASE NO. 2:18-cv-01514-BJR

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

In this action, Plaintiff Navigators Specialty Insurance Company ("Navigators") seeks relief from the Court as to whether Navigators has a duty to defend Defendant Double Down Interactive, LLC ("Double Down") in a putative class action lawsuit. Compl., Dkt. No. 1 at ¶ 1. The parties have brought cross-motions for summary judgment. Dkt. Nos. 16, 18. Having reviewed the parties' filings, the record of the case, and the relevant legal authorities, the Court concludes that Navigators does not have a duty to defend Double Down in the putative class action.

## II. BACKGROUND

Double Down operates Double Down Casino, an online game where players are initially given one million free digital chips to play casino-like games on an interactive platform. Dkt. No. 17 at 11. After players use their initial chips, Double Down offers to sell them additional chips starting at $2.99 for 300,000 chips so that they can continue playing the game. *Id.* at 12.

Currently, Double Down is the defendant in a putative class action lawsuit on behalf of Adrienne Benson, Mary Simonson, and all others similarly situated ("Benson action"). *Id.* at 1. Benson began playing Double Down Casino on Facebook in 2013, and since 2016 she has allegedly lost over $1,000 playing the game. *Id.* at 10. The complaint for the Benson action alleges unjust enrichment; violations of Washington's gambling statute, Wash. Rev. Code § 4.24.070; and violations of Washington's Consumer Protection Act, Wash. Rev. Code § 19.86.010. *Id.* at 12-17.

In 2017, DoubleU Games bought Double Down. Dkt. No. 17, Ex. A. at ¶ 24. Around that time, Double Down purchased two claims-made liability insurance policies from Navigators. Dkt. Nos. 1-3, 1-4. The first is SmartPolicy No. CH17DOL331672IC ("2017-2018 Policy"), which provides coverage for claims made between June 2017 and June 2018. Dkt. No 1-3, Endorsement No. 5. The second is SmartPolicy No. CH17DOL331675IC ("Runoff Policy"), which provides coverage for claims made between June 2017 and June 2023, but contains an endorsement ("Runoff Endorsement") that excludes from coverage claims "based upon, arising from, or in any way related to any Wrongful Act committed or allegedly committed on or after June 1, 2017." Dkt. No. 1-4, Endorsement No. 5. The Runoff Policy contains several other exclusions from coverage, including an interrelationship of claims provision and a professional services exclusion. Dkt. No. 1-4, Directors and Officers Liability Coverage Part, § 3 A.11; General Terms and Conditions, § VIII.B.

In another court, Navigators is currently defending Double Down in the Benson action under a reservation of rights. Dkt. No. 16 at 3. In this Court, Navigators alleges that it has no duty to defend or indemnify Double Down in the Benson action under either insurance policy. *Id.*

### III. LEGAL STANDARDS

**A. Standard for summary judgment**

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Johnson v. Poway Unified Sch. Dist.,* 658 F.3d 954, 960 (9th Cir. 2011). The parties do not dispute any material facts in this case. Therefore, it is appropriate for the Court to consider summary judgment.

**B. Choice of law**

Pursuant to 28 U.S.C. § 1332, the basis of the Court's jurisdiction in this case is diversity because Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds the sum value of $75,000. Dkt. No. 1-1 at 1. If a defendant has its principal place of business or is incorporated in a state, it is subject to the substantive laws of that state when sitting in diversity. *See* 18 U.S.C. § 1332(c)(1); *Hanna v. Plumer*, 380 U.S. 460, 464 (1965); *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 535 (1958). Defendant Double Down is incorporated or holds its principal place of business in Washington. Dkt. No. 1-1 at 1. Therefore, Washington state law governs this dispute.

**C. Standard for finding a duty to defend**

"[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013) (en banc). However, the insurer "will not be compelled to defend its insured when

the potential for liability is . . . tenuous and farfetched." *Id*. ("Although the duty to defend is broad, it is not triggered by claims that clearly fall outside the policy."); *see also Lassen Canyon Nursery, Inc. v. Royal Ins. Co. of Am.*, 720 F.2d 1016, 1018 (9th Cir. 1983).

## IV. DISCUSSION

There are three main contested issues about whether the Runoff Policy provides coverage[1]: (1) whether the Runoff Policy's interrelationship of claims provision applies; (2) whether the policy period provisions of the Runoff Policy preclude coverage for the Benson action; and (3) whether the professional services exclusion applies.

**1. Interrelationship of claims provision**

Navigators argues that coverage for the Benson action is barred by the interrelationship of claims provision. The Runoff Policy requires that claims be "first made" during the policy period. Dkt. No. 1-4, Directors and Officers Liability Coverage Part, § 1. The interrelationship of claims provision states:

> All Claims involving the same Wrongful Act or Related Wrongful Acts of one or more Insureds will be considered a Single Claim, and will be deemed to have been made on . . . the earliest date on which any such Wrongful Act or Related Wrongful Act was reported under this [Runoff Policy] or any other policy providing coverage.

Dkt. No. 1-4, General Terms and Conditions, § VIII.B. The policy further defines "Related Wrongful Acts" as:

---

[1] Double Down does not dispute that the 2017-2018 Policy does not cover the Benson action. The 2017-2018 Policy covers claims from June 2017 through June 2018 and excludes any claims that are based on wrongful acts that occurred prior to June 1, 2017. Dkt. No. 1-3 at 43, Endorsement No. 5. The Benson action alleges that since 2016, Benson has wagered and lost more than $1,000 playing Double Down Casino. Dkt. No. 17 at ¶ 34. Given that at least some of the alleged wrongful acts in the Benson action occurred prior to June 2017, it is clear that the Benson action is not covered under the 2017-2018 Policy.

4

> "Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision."

*Id.* at General Terms and Conditions, § II.M.

Navigators argues that the interrelationship of claims provision bars coverage for the Benson action because that action is related to a previous class action lawsuit brought by Margo Phillips in 2015 ("Phillips action"), and therefore, it is not a claim first made during the policy period. Double Down asserts that the two claims are not related because the plaintiffs are different, the losses of the plaintiffs are different, the claims are temporally distinct, and each claim is subject to different state laws. Double Down also argues that finding these two claims to be related would be tantamount to eliminating insurance coverage for Double Down's entire business model, and thus, finding them to be related could not be a correct interpretation. Double Down's arguments are not convincing.

In determining whether two claims are related under the definition of "Interrelated Wrongful Acts" that was used in the Runoff Policy, the Court looks not to whether there are differences between the two claims at issue, but instead whether there is "any common fact, circumstance, situation, transaction, event or decision" that "logically or casually connect[s]" the acts. *See Carolina v. Cas. Ins. Co. v. Omeros Corp.*, No. C12-287RAJ, 2013 WL 5530588, at *3 (W.D. Wash. Mar. 11, 2013) (applying Washington law and finding that after interpreting an identical related claims provision to the Runoff Policy, two claims that arose from the same false reporting action were related).

The language of interrelated claims that was agreed to by the parties in the Runoff Policy is broad. Applying this policy language to the Court's review of the Benson action and the Phillips action, the similarities between the two actions are obvious. Several entire portions of the Benson complaint are copied directly from the Phillips complaint. The two complaints are

5

not tenuously related; in many aspects they *are* the same complaint. The facts and class allegation sections of each complaint are substantially identical, both claims allege violations of similar state gambling statutes, both complaints allege violations of similar consumer protection statutes, and both claims allege unjust enrichment.

The Ninth Circuit has found that claims are interrelated under similar circumstances. In *WFS Financial, Inc. v. Progressive Cas. Ins. Co., Inc.*, the court found that although two suits "were filed by two different sets of plaintiffs in two different fora under two different legal theories, the common basis for those suits was the WFS business practice of permitting independent dealers to mark up WFS loans." No. 05-55854, 2007 WL 1113347, at *1 (9th Cir. Apr. 16, 2007). Thus, the relationship between the two claims was not so "attenuated or unusual" to prevent the insurer from treating them as the same claim. *Id.*

The Eleventh Circuit has also found that two claims similar to those here were interrelated. *Vozzcom, Inc. v. Great Am. Ins. Co. of N.Y.*, 374 Fed. App'x. 906, 907-08 (11th Cir. 2010). In *Vozzcom, Inc.*, the court found that three claims were related when the plaintiffs were all cable installers who worked for Vozzcom during the same approximate time period, the complaints arose under similar facts, and the complaints all alleged Fair Labor Standards Act violations. *Id.* at 908. The court found that all of these factors made the three claims "at the very least" interrelated. *Id.* at 907. The Benson and Phillips action share several of the similarities between the claims in *Vozzcom* that the court found were more than enough to find the claims to be interrelated.

Moreover, the present case is distinguishable from the claims in *Fin. Mgmt. Advisor, LLC v. Am. Intern. Specialty Lines Ins. Co.*, 506 F.3d 922, 926 (9th Cir. 2007) (applying California law). In the authority proffered by the Defendant, the Ninth Circuit did not find that a

6

contractor's two claims were related under an insurance policy. *Id*. The policy had an interrelated claims provision, but did not define the term "related acts." However, the Court followed a definition of "related" commonly used by California courts that includes both logical and causal connections. *Id*. The court's reasoning for finding the claims unrelated was that the plaintiffs in each claim complained of different wrongful acts. *Id*. In one claim, the plaintiff complained of various oral omissions and representations made in connection with several investment vehicles. In the other claim, the plaintiff complained about a breach of a written agreement concerning an investment. *Id*. The mere fact that both parties were advised to invest in the same fund and blamed the same financial advisor did not render the claims related. *Id*. Unlike *Fin. Mgmt. Advisor*, *LLC*, the parties in the Benson and Phillips actions complain of the same conduct.

Double Down relies on *Hrobuchak v. Fed. Ins. Co* to argue that if the Court were to find that the Benson action and the Phillips action were related, then nearly any conceivable claim made against Double Down would be found to be related to the Phillips action. No. 3:10-cv-481, 2010 WL 4237435 (M.D. Pa. Oct. 21, 2010). In *Hrobuchak*, the court held that finding the claims to be related would make the liability policy "essentially a nullity" because almost every suit brought against the company would relate back to the claim at issue. *Id.* at *4. The Benson action and Phillips action, on the other hand, attack only one portion of the Double Down's business: that the Double Down Casino game violates state gambling laws.

The Runoff Policy presents an unambiguous definition of "Related Wrongful Acts" that includes "any common fact, circumstance, situation, transaction, event or decision." Dkt. No. 1-4, General Terms and Conditions, § II.M. When interpreting an insurance policy, the language in the policy must be given its ordinary meaning. *Witherspoon v. St. Paul Fire & Marine Ins.*

*Co.*, 548 P.2d 302, 308 (Wash. 1976). As applied, the Benson action and the Phillips action have striking similarities: the facts that arose to each complaint were nearly indistinguishable and the complaints themselves are facially identical in many areas. Therefore, the Court finds that the Benson action and the Phillips action are interrelated.

### 2. The Runoff Policy's runoff endorsement

Navigators additionally argues that the Runoff Policy's runoff endorsement precludes coverage of the Benson action because the acts within the Benson action occurred within the Runoff Policy period, June 1, 2017 to June 2023, which is not permitted by the policy. Double Down concedes that alleged wrongful acts occurred both before and during the policy period but argues that the Runoff Policy still provides coverage because the Policy language is ambiguous, and any ambiguity should be resolved in their favor.

Double Down's argument is flawed in light of the plain language of the runoff endorsement, which states:

> [Navigators] shall not be liable for Loss in connection with any claim for, based upon, arising from, ***or in any way related to any*** Wrongful Act committed or allegedly committed on or after June 1, 2017.

Dkt. No. 1-4, Endorsement No. 5 (emphasis added). The wrongful acts in the Benson action alleged to have occurred prior to June 1, 2017 are "in connection with" and "in any way related" to the wrongful acts in the Benson action that are alleged to have occurred after June 1, 2017 because they arise from the same conduct. *See Madison Materials Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 523 F.3d 541, 544 (5th Cir. 2008) (explaining that previous acts of embezzlement that occurred outside of a policy period were related to other acts of embezzlement that occurred within the policy period because they were part of the same embezzlement scheme).

The Court is unpersuaded by Double Down's assertion that the language of the 2017-2018 Policy injects ambiguity into the runoff endorsement. The 2017-2018 Policy bars coverage for:

> [Claims] based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any Wrongful Acts or Related Wrongful Acts where ***all or any*** of such acts were committed, attempted, or allegedly committed or attempted prior to June 1, 2017.

Dkt. No 1-3, Endorsement No. 5 (emphasis added). Double Down focuses on the "all or any" language in the 2017-2018 Policy as contrasted with the "any" language in the Runoff Endorsement. This distinction, however, is without difference – at least as applied to the facts in this case. *See State Farm Fire & Cas. Co. v. English Cove Ass'n*, 88 P.3d 986, 991 (Wash. Ct. App. 2004) (finding that just because plaintiff could have further clarified or expressly defined a term did not make it ambiguous). Moreover, the Runoff Policy period is consistent with the common expectations and uses of a Runoff Policy. *See Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 341 F.3d 415 (5th Cir. 2003); *HSB Grp., Inc. v. SVB Underwriting, Ltd*., 664 F. Supp. 2d 158, 165 (D. Conn. 2009) (explaining that a Runoff Policy is typically acquired when a company changes ownership in order to extend the policy period after the ownership change to cover claims regarding conduct that occurred before the change in control).

The Court concludes that Navigators' reading of the runoff endorsement is reasonable, that the terms at issue are unambiguous, and that an ordinary reading of the policy language bars coverage.

**3. The Runoff Policy's professional services exclusion**

Navigators next argues that it has no duty to defend or indemnify Double Down in the Benson action because the Runoff Policy's professional services exclusion applies. The exclusion states that any claim made against the Insured "based upon, arising out of, relating to,

9

directly or indirectly resulting from, or in any way involving the performance by any Insured of professional services for others for a fee or other compensation or remuneration" shall be barred from coverage. Dkt. No. 1-4, Directors and Officers Liability Coverage Part, § 3 A.11. Navigators' arguments are not persuasive.

In Washington, a professional service "is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *E.g.*, *Bank of Calif., N.A. v. Opie*, 663 F.2d 977, 981 (9th Cir. 1981) (applying Washington law); *Planet Earth Found. v. Gulf Underwriters Ins. Co.*, No. 55068-3-I, 2005 WL 3275619, at *1 (Wash Ct. App. Dec. 5, 2005).

An act will not be considered a professional service when that act requires no specialized knowledge or individualized decision-making. *See, e.g.*, *Tagged, Inc. v. Scottsdale Ins. Co.*, No. JFM-11-127, 2011 WL 2748682, at *1 (S.D.N.Y. May 27, 2011) (applying California law); *Jefferson Ins. Co. of N.Y. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 677 N.E. 2d 225, 230 (Mass. App. Ct. 1997). Washington courts appear to have not yet addressed how "professional services" applies to a website such as Double Down Casino. Therefore, both parties rely on *Tagged, Inc.*, where a district court evaluated a professional services exclusion's application to a website. 2011 WL 2748682, at *1. In *Tagged*, the court found that a company representative's determination of when to remove inappropriate content from its website was a professional service since the website made representations to parents and guardians of its teenage users that the company would remove explicit content. *Id.* at *6. The court distinguished between the act of identifying explicit material, which was an intellectual and mental task, and something that

was merely incidental to the site's everyday operations, which would not be considered a professional service. *Id.*

In another instructive case, *Jefferson Ins. Co.*, a Massachusetts appellate court found that a radio dispatcher's miscommunication with ambulance attendants was not a professional service because the task was not one that required an exercise of professional judgment; it was merely an administrative decision that could be performed by anyone lacking professional training and expertise. 677 N.E. 2d. at 230. As the court reasoned in *Jefferson*, it may have been a professional service to develop plans for the emergency service system and to operate on patients using specialized knowledge. However, it was not a professional service to communicate with ambulance attendants because that was merely an incidental administrative task that does not require an intellectual level of decision-making. Double Down presents an analogous situation. In the definition of professional services used by Washington courts, a professional service must be something that requires "skill" that is "predominantly mental or intellectual." *E.g.*, *Bank of Calif., N.A.,* 663 F.2d at 981; *Planet Earth Found,* 2005 WL 3275619, at *1. While designing and coding online games might be considered a professional service, simply playing the game is not because it only requires the computer to execute a function that it was programmed to do. Therefore, it does not meet the requisite level of skill to be deemed a professional service under the definition used by Washington courts.

Therefore, the Court does not find persuasive the assertion that playing a game such as Double Down Casino is a professional service. Construing the policy language in favor of the insured, the Court concludes that Navigators' professional services exclusion in the Runoff Policy does not apply to the Benson action. *See Am Star Ins. Co. v. Grice*, 854 P.2d 622, 625

(Wash. 1993) (en banc) (holding that any ambiguity in the policy language should be resolved in the insured's favor, especially when exclusionary clauses seek to limit policy coverage).

## V. CONCLUSION

For the foregoing reasons, the Plaintiff's motion for summary judgment (Dkt. No. 16) is GRANTED IN PART and the Defendant's cross-motion for summary judgment (Dkt. No. 18) is DENIED, consistent with the following declarations:

1. Navigators does not have a duty to defend Double Down in the Benson action under the 2017-2018 policy;
2. Navigators does not have a duty to defend Double Down in the Benson action under the Runoff Policy because the Interrelationship of Claims Exclusion bars coverage;
3. Navigators does not have a duty to defend Double Down in the Benson action under the Runoff Policy because the Runoff Endorsement bars coverage.

SO ORDERED.

DATED this 26th day of July, 2019.

*Barbara J. Rothstein*
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE